UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

1) PROGRESSIVE NORTHERN INSURANCE COMPANY,

Plaintiff,

v. Case No.: 17-CV-229-JHP

1) J&S EXCHANGE, INC.;
2) IVAN E. FRY; and
3) WILMA CHARLIEN PEAVLER, as the Special Administrator for the Estate of CHRISTOPHER ALLEN RICHTER,

Defendants.

## COMPLAINT

The Plaintiff, Progressive Northern Insurance Company ("Plaintiff" or "Progressive"), by and through its undersigned attorneys, for its Complaint against the Defendants, J&S Exchange, Inc.; Ivan E. Fry; and Wilma Charlien Peavler, as the Special Administrator for the Estate of Christopher Allen Richter, states as follows:

### INTRODUCTION

1. This is an action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine a real and justiciable controversy among the parties with respect to their rights and obligations, if any, under a certain insurance contract, described more fully below.

### THE PARTIES

2. Plaintiff, Progressive Northern Insurance Company, is a corporation duly organized and existing under the laws of the State of Wisconsin with its principal place of business in a state

other than Oklahoma. Progressive has not been incorporated in Oklahoma, and has not had its principal place of business in Oklahoma.

3. Defendant, J&S Exchange, Inc., is a corporation duty organized and existing under the laws of Oklahoma with its principal place of business in Pontotoc County, Allen, Oklahoma.

4. Defendant, Ivan E. Fry, is a citizen of the state of Oklahoma who, upon information and belief, resides in Kay County, Oklahoma.

5. Defendant, Wilma Charlien Peavler, as the Special Administrator for the Estate of Christopher Allen Richter, is a citizen of the state of Oklahoma who, upon information and belief, resides in Kay County, Oklahoma.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1332, this Court has proper subject matter jurisdiction as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens/entities of different states. *See* ¶¶ 2-5 and 12.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 116(b). *Id.*

## FACTUAL BACKGROUND

8. On July 7, 2014, Defendant Ivan E. Fry ("Defendant Fry") was involved in a single-vehicle accident while driving a 2001 Dodge Dakota, VIN 1B7FL26PX1S335323 ("the Dodge"). *See* **EXHIBIT 1**, Official Oklahoma Traffic Collision Report with personal identifiers redacted.

9. The Dodge was owned by Defendant Fry on the date of the underlying accident. *See* **EXHIBIT 2**, Oklahoma Tax Commission documentation with personal identifiers redacted.

10. At the time of the July 7, 2014, accident ("the underlying accident"), decedent, Christopher Allen Richter ("Richter") was a passenger in the Dodge Defendant Fry was driving. *See* **EXHIBIT 1**.

11. As a result of the accident, Richter passed away. *See* **EXHIBIT 3**, Petition, *Wilma Charlien Peavler, as the Special Administrator for the Estate of Christopher Andrew Richter v. J&S Exchange, Inc. and Ivan Edward Fry*, In the District Court of Kay County, State of Oklahoma, Case No. CJ-2016-116 ("the *Peavler* litigation" or "the *Peavler* lawsuit"), filed July 5, 2016.

12. Defendant Peavler instituted suit against Defendant Fry and Defendant J&S in which she demanded judgment in excess of $75,000. *Id.*

13. The *Peavler* lawsuit alleges Richter's death was due to the negligence of Defendant Fry; that Defendant Fry was an employee of Defendant J&S Exchange, Inc. ("Defendant J&S") at the time of the underlying accident; that Defendant Fry was acting within the course and scope of his employment with Defendant J&S at the time of the underlying accident; and that Defendant J&S is liable, *via* respondeat superior, for the negligence of Defendant Fry. *Id.* at ¶¶ 1-5.

14. On information and belief, Defendant Fry was an employee of Defendant J&S on July 7, 2014. *See* **EXHIBIT 3** at ¶ 2 and compare to **EXHIBIT 4**, Answer of Ivan Edward Fry to the *Peavler* Petition at ¶ 2. *See also* **EXHIBIT 5**, Affidavit of Joe T. Nemecek, President and Owner of Defendant J&S, at ¶ 2.

15. On information and belief, Richter was an employee of Defendant J&S on July 7, 2014. *See* **EXHIBIT 5** at ¶ 2.

16. The Defendants in this action are the parties to the *Peavler* lawsuit. *See* **EXHIBITS 3** and **4**. *See also* **EXHIBIT 6**, Motion to Dismiss (without exhibits) filed by Defendant J&S in the *Peavler* litigation and **EXHIBIT 7**, Response to Motion to Dismiss (without exhibits) filed by

Defendant, Wilma Charlien Peavler, as the Special Administrator for the Estate of Christopher Allen Richter ("Defendant Peavler") in the *Peavler* litigation.

17. Defendant J&S has asserted in the *Peavler* litigation that Defendant Peavler's action against should be dismissed because Defendant Peavler has failed to state a cause of action against it and because the allegation asserted by Defendant Peavler are subject to the exclusive jurisdiction of the Workers' Compensation Court. *See* **EXHIBIT 6**.

18. Defendant Peavler has asserted in the *Peavler* litigation that her claims against Defendant J&S are not subject to the exclusive jurisdiction of the Workers' Compensation Court because Richter, while an employee of Defendant J&S on July 7, 2014, was not acting in the course and scope of his employment at the time of the underlying accident. *See* **EXHIBIT 7**.

19. The Defendants dispute whether Defendant Fry was in the course and scope of his employment with Defendant J&S at the time of the underlying accident. *See* **EXHIBIT 3** at ¶ 3 and compare to **EXHIBIT 4** at ¶ 3. *See also* **EXHIBIT 5** at ¶¶ 3-8; **EXHIBIT 6**; **EXHIBIT 7**; and **EXHIBIT 8**, Affidavit of Zachariah W. Vassar, at ¶¶ 2-3.

20. Defendant Peavler has alleged Defendant Fry was acting in the course and scope of his employment with Defendant J&S at the time of the underlying accident because he (1) was transporting tools to the worksite, and (2) was providing transportation to Richter and non-party Zachariah W. Vassar ("Vassar") to the worksite at the direction of Defendant J&S. *See* **EXHIBIT 7**. *See also* **EXHIBIT 8** at ¶¶ 2-3.

21. Defendant Peavler has alleged Richter was not acting in the course and scope of his employment with Defendant J&S at the time of the underlying accident because Richter was merely commuting to the worksite and was not carrying out any work assignments or tasks. *See* **EXHIBIT 7**. *See also* **EXHIBIT 8** at ¶¶ 4-5.

## DEFENDANT FRY'S INSURANCE POLICY

22. Progressive issued to its named insured, Cynthia Wolfkill, Policy No. 902648618 ("the Fry Policy"), with effective dates of March 20, 2014, to September 20, 2014. Defendant Fry, who resides with and is the son of Cynthia Wolfkill, is identified as a driver and household resident on the Fry Policy, which identifies the Dodge on the Declarations Page as an insured auto and provides $25,000 per person/$50,000 per accident of liability insurance. *See* **EXHIBIT 9**, Fry Policy Declarations Page; **EXHIBIT 10**, policy contract form 9610A OK (07/06); **EXHIBIT 11**, endorsement form 4884 (10/08); and **EXHIBIT 12**, endorsement form Z445 OK (08/10).

23. The Fry Policy contains the following language:

**PART I - LIABILITY TO OTHERS**

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

* * *

**ADDITIONAL DEFINITION**

When used in this Part I:
"**Insured person**" means:

a. **you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of an a**uto** or **trailer**;

* * *

c. any person or organization with respect only to vicarious liability for the acts or omissions of a person described in a or b above;

* * *

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.**

> Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for:
>
> * * *
>
> 3. **bodily injury** to an employee of **that insured** person arising out of or within the course of employment. This exclusion does not apply to domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

*See* **EXHIBIT 10** at pp.2-3.

**DEFENDANT J&S' INSURANCE POLICY**

24. Progressive issued to its named insured, J&S Exchange, Inc., Policy No. 08201121-2 ("the J&S Policy"), with effective dates of August 21, 2013, to August 21, 2014. The J&S Policy did not identify the Dodge on the Declarations Page as an insured auto. The J&S Policy provides Uninsured/Underinsured Motorist ("UM/UIM"), Liability, Hired Auto Liability, and Employer Non-Owned Auto Liability coverage, all with a combined single limit of $1,000,000. The J&S Policy also provides Medical Payments ("medpay") coverage in the amount of $5,000 per person. *See* **EXHIBIT 13**, J&S Policy Declarations Page; **EXHIBIT 14**, policy contract form 6912 (06/10); **EXHIBIT 15**, endorsement form 2852OK (06/11); **EXHIBIT 16**, endorsement form 4757OK (11/04); **EXHIBIT 17**, endorsement form 1890 (03/08); **EXHIBIT 18**, endorsement form 1891 (03/08); **EXHIBIT 19**, endorsement form 1198 (01/04); **EXHIBIT 20**, endorsement form 4852OK (02/10); **EXHIBIT 21**, endorsement form 4881OK (06/11); and **EXHIBIT 22**, endorsement form Z228 (01/11).

25. The J&S Policy contains the following language:

> **GENERAL DEFINITIONS**
>
> **The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

* * *

5. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after you acquire it that **you** want **us** to cover it for that coverage.

      If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto. We** may charge premium for the additional **auto** from the date **you** acquire the auto.

      With respect to Part I - Liability To Others, if we provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as we provide for any **auto** shown on the **declarations page**.

* * *

   c. Any replacement **auto** on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of your ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or loss to the replaced **auto** that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that **auto.**

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as we provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30 day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits or make any other changes to **your** policy during this 30 day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase your limits or make such changes.

* * *

17. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

* * *

**PART I - LIABILITY TO OTHERS**

**INSURING AGREEMENT – LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**.

* * *

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in Part I – Liability To Others, **insured** means:

* * *

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

* * *

(c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

* * *

**<u>EXCLUSIONS</u> – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

* * *

3. **Worker's Compensation**
Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

* * *

5. **Employee Indemnification and Employer's Liability**
**Bodily injury** to:
a. An employee of any **insured** arising out of or within the course of:
(i) That employee's employment by any **insured**; or
(ii) Performing duties related to the conduct of any **insured's** business;
b. The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a, above.

This exclusion applies:
a. Whether the **insured** may be liable as an employer or in any other capacity;

*　*　*

6. **Fellow Employee**
   **Bodily injury** to:
   a. a fellow employee of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.

*See* **EXHIBIT 14** at pp.2-3, 5-6, and 9-10.

**UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** because of **bodily injury**:
1. sustained by an **insured**;
2. caused by an accident; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto**.

*　*　*

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:
1. "**Insured**" means:

*　*　*

   b. if the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person:

(i) any person **occupying your insured auto** or **temporary substitute auto**

*See* **EXHIBIT 15**.

**MEDICAL PAYMENTS COVERAGE ENDORSEMENT**

Except as specifically modified in this Endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**INSURING AGREEMENT**

Subject to the Limits of Liability, if you pay the premium for Medical Payments Coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of bodily injury:

1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance or use of a motor vehicle or **trailer**.

* * *

**ADDITIONAL DEFINITIONS**

When used in this Endorsement, whether in the singular, plural, or possessive:

1. "**Insured**" means:

* * *

b. if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto, temporary substitute auto,** or **trailer** while attached to an **insured auto**.

* * *

**<u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE**

**WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

Coverage under this Endorsement does not apply to **bodily injury**:

* * *

2. occurring during the course of employment if workers' compensation coverage should apply;

*See* **EXHIBIT 16**.

**EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT**

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT**

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an auto that you do not own, lease, hire, rent, or borrow, and that is used in connection with your business. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or your personal affairs.

**CHANGES TO PART I - LIABILITY TO OTHERS**

The definition of **insured auto** is modified to include a **non-owned auto**. The definition of **insured** does not include the owner of a **non-owned auto**.

* * *

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED**.

*See* **EXHIBIT 17.**

## DECLARATORY RELIEF SOUGHT

26. Progressive maintains that there is no liability coverage available under the Fry Policy to respond to the claims asserted against Defendant J&S by Defendant Peavler in the *Peavler* litigation.

27. Specifically, Progressive maintains Richter's death arose out of or within the course of his employment by Defendant J&S, and therefore liability coverage for Defendant J&S is excluded under the Fry Policy.

28. Progressive further maintains that as no liability coverage for Defendant J&S is available under the Fry Policy, Progressive owes no duty to provide Defendant J&S a defense to the *Peavler* litigation under the Fry Policy.

29. Progressive maintains there is no liability coverage available under the J&S Policy to respond to Defendant Peavler's claims against Defendant Fry.

30. Specifically, Progressive maintains that as Defendant Fry was the owner of the Dodge that was involved in the underlying accident, Defendant Fry does not fall within the definition of an "insured" for purposes of the liability coverage provided by the J&S Policy.

31. Progressive further maintains that as no liability coverage for Defendant Fry is available under the J&S Policy, Progressive owes no duty to provide Defendant Fry a defense to the *Peavler* litigation under the J&S Policy.

32. Progressive maintains there is no liability coverage available under the J&S Policy to respond to the claims asserted against Defendant J&S by Defendant Peavler in the *Peavler* litigation.

33. Specifically, Progressive maintains the following:

a. Richter's death is an obligation for which J&S or a workers' compensation insurer of J&S – even if one does not exist – may be held liable under Oklahoma workers' compensation law; and/or

b. Richter's death arose out of or occurred within the course of his employment by J&S; and/or

c. Richter's death arose out of or occurred within the course of his performance of duties related to the conduct of J&S' business; and/or

d. if Defendant Fry is deemed to be an insured under the J&S Policy, Richter was a fellow employee of Defendant Fry whose death occurred while within the course of their employment or while they were performing duties related to the conduct of J&S' business.

34. Progressive further maintains that as no liability coverage for Defendant J&S is available under the J&S Policy, Progressive owes no duty to provide Defendant J&S a defense to the *Peavler* litigation under the J&S Policy.

35. Progressive maintains there is no UM/UIM coverage available under the J&S Policy to respond to any claim Defendant Peavler has made or could make as a result of the underlying accident.

36. Specifically, Progressive maintains Richter does not fall within the definition of an "insured" for purposes of the UM/UIM coverage provided by the J&S Policy.

37. Progressive maintains there is no medpay coverage available under the J&S Policy to respond to any claim Defendant Peavler has made or could make as a result of the underlying accident.

38. Specifically, Progressive maintains Richter does not fall within the definition of an "insured" for purposes of the medpay coverage provided by the J&S Policy.

39. In the alternative, if Richter is deemed to fall within the definition of an "insured" for purposes of the medpay coverage provided by the J&S Policy, Progressive maintains that coverage is otherwise excluded because Richter's death occurred during the course of employment and workers' compensation coverage should apply.

40. Progressive reserves the right to assert other provisions of the J&S Policy and Fry Policy as discovery continues.

41. Based on the foregoing, there exists an actual and justiciable controversy between Progressive and the Defendants within the jurisdiction of this Court and involving the rights and liabilities of the parties under certain contracts of insurance, which controversy may be determined by a judgment of this court. Progressive seeks guidance from this Court to determine the rights and liabilities of the parties.

WHEREFORE, Plaintiff prays that:

1. This Court determine and adjudicate the rights and liabilities of the parties with respect to the subject contracts of insurance; and

2. This Court award Progressive such other and further relief as in law and justice it may be entitled to receive.

Respectfully submitted,

s/ Dawn M. Goeres
Brad L. Roberson, OBA No. 18819
Dawn M. Goeres, OBA No. 20344
PIGNATO, COOPER, KOLKER & ROBERSON, P.C.
Robinson Renaissance Building
119 North Robinson Avenue, 11th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 606-3333
Facsimile: (405) 606-3334
Email: brad@pclaw.org
dawn@pclaw.org
**ATTORNEYS FOR PLAINTIFF,
PROGRESSIVE NORTHERN
INSURANCE COMPANY**