| | |
|---|---|
| **PROGRESSIVE NORTHERN INSURANCE COMPANY,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| **J&S EXCHANGE, INC. and WILMA CHARLIEN PEAVLER, as the Special Administrator for the Estate of CHRISTOPHER ALLEN RICHTER,** | )    **Case No.: 17-CV-229-JHP** ) ) ) ) ) ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment filed by Plaintiff, Progressive Northern Insurance Company ("Progressive") [Doc. No. 28]. Defendant, Wilma Charlien Peavler, as the Special Administrator for the Estate of Christopher Allen Richter ("Defendant Peavler") has filed her Response to Plaintiff's Motion for Summary Judgment [Doc. No. 30] and Progressive has filed its Reply in Support of Motion for Summary Judgment [Doc. No. 32]. Defendant, J&S Exchange, Inc. ("Defendant J&S"), has not filed any Response to Plaintiff's Motion for Summary Judgment.

## BACKGROUND

### A. General Background

On July 7, 2014, non-party Ivan Fry ("Fry"), non-party Zach Vassar ("Vassar"), and decedent, Christopher Allen Richter ("Richter") were involved in a one-car accident which

resulted in the death of Richter.  Fry was driving a 2001 Dodge Dakota ("the Dodge") when the accident occurred. At the time of the accident, Fry was insured under Policy No. 902648618 ("the Fry Policy"), a personal policy of automobile insurance that had been issued by Progressive to Fry's mother, Cynthia Wolfkill.  By coincidence, Defendant J&S was also insured by Progressive on July 7, 2014, under Policy No. 08201121-2 ("the J&S Policy"), a commercial policy of automobile insurance issued to Defendant J&S.

As a result of the accident, Defendant Peavler filed suit against Fry and Defendant J&S in Kay County, Oklahoma ("the *Peavler* litigation" or "the *Peavle*r lawsuit"). Defendant Peavler's claims against Defendant J&S are based on the theory of *respondeat superior*.  Due to the allegations asserted in the *Peavler* litigation, Progressive filed this declaratory judgment action seeking a judicial determination it (1) will owe no more than $25,000 of indemnity coverage to Defendant Peavler under the Fry Policy in the event any verdict is entered against Defendant J&S in the *Peavler* litigation based on the theory of vicarious or *respondeat superior* liability; (2) owes no uninsured/underinsured ("UM/UIM") coverage to Defendant Peavler under the J&S Policy; (3) owes no medical payments ("medpay") coverage to Defendant Peavler under the J&S Policy; and (4) owes no duty to defend or indemnify Defendant J&S or Fry under the liability coverage provisions of the J&S Policy.

## B.    Relevant Procedural History

Progressive instituted this declaratory judgment action on June 16, 2017, seeking a declaratory judgment from this Court as to its rights and liabilities under the Fry Policy and the J&S Policy. [Doc. No. 1.] Originally, Ivan Fry was also named as a defendant.  *Id*.

However, on October 11, 2017, Progressive filed a Notice of Voluntary Dismissal of Ivan Fry, which memorialized Fry's stipulation that he would be bound by the judicial determinations of this Court. [Doc. No. 15.] Defendant J&S filed its Answer on August 17, 2017, [Doc. No. 10], and Defendant Peavler filed her Answer on September 5, 2017, [Doc. No. 13]. Neither Defendant J&S nor Defendant Peavler asserted any affirmative defenses, counterclaims, or crossclaims. [Doc. Nos. 10 and 13.]

On April 2, 2018, Progressive filed its Motion for Summary Judgment. [Doc. No. 28.] Defendant Peavler filed her Response on April 12, 2018, [Doc. No. 30] and Progressive filed its Reply on April 26, 2018, [Doc. No. 32]. Defendant J&S filed no Response to Progressive's Motion for Summary Judgment. Defendant Peavler sought leave to file a supplemental Response on May 1, 2018, [Doc. No. 33], to which Progressive objected, [Doc. No. 40]. Defendant Peavler's request for leave to file a supplemental Response was denied by this Court by way of minute order on May 16, 2018. [Doc. No. 41.] As such, Progressive's Motion for Summary Judgment is fully briefed and before this Court.

The parties jointly sought a stay of remaining deadlines in this matter on May 31, 2018, [Doc. No. 43] on the grounds this Court's ruling on Progressive's Motion for Summary Judgment, even if it is not granted, may moot the need for further litigation of Progressive's declaratory judgment action. [Doc. No. 43.] The parties' request for a stay was granted by Order of this Court on June 1, 2018.[1] [Doc. No. 45.] Pursuant to the terms of that Order, in the event this Court's ruling on Progressive's Motion for Summary Judgment does not

---

[1]The parties also jointly requested a stay of the Settlement Conference in this matter, which was granted. [Doc. Nos. 44 and 46].

dispose of this matter in full, the parties are to file either a joint dismissal without prejudice or request a lift of the stay in this matter within fourteen (14) days of the entry of this Opinion and Order. *Id.*

## C.  Undisputed Factual Background

On July 7, 2014, Fry was involved in a single-vehicle accident while the Dodge, which he – not Defendant J&S – owned.  At the time of the underlying accident, Richter was a passenger in the Dodge Fry was driving.  Fry was driving Richter and Vassar to the J&S job site on July 7, 2014, and at that time he had J&S' tools in the Dodge.  It is undisputed Fry and Richter were both employees of Defendant J&S on July 7, 2014.  As a result of the accident, Richter passed away. Defendant Peavler instituted suit against Fry and Defendant J&S in which she demanded judgment in excess of $75,000.  The *Peavler* lawsuit alleges Richter's death was due to the negligence of Fry; that Fry was an employee of Defendant J&S at the time of the underlying accident; that Fry was acting within the course and scope of his employment with Defendant J&S at the time of the underlying accident; and that Defendant J&S is vicariously liable for the negligence of Fry.

The Defendants dispute whether Fry was acting in the course and scope of his employment with Defendant J&S at the time of the underlying accident.  Defendant Peavler has alleged Richter was not acting in the course and scope of his employment with Defendant J&S at the time of the underlying accident because Richter was merely commuting to the worksite and was not carrying out any work assignments or tasks.  It is undisputed Defendant J&S had workers' compensation coverage at the time of the underlying accident.

Progressive issued the Fry Policy to Cynthia Wolfkill, and Fry was identified as a driver and household resident on the Fry Policy at the time of the accident. The Fry Policy also identifies the Dodge on the Declarations Page as an insured auto and provides $25,000 per person/$50,000 per accident of liability coverage. It is undisputed that Fry is an insured under the Fry Policy and that $25,000 per person/$50,000 per accident of liability coverage is available to respond on Fry's behalf, in his individual capacity, to the claims asserted by Defendant Peavler in the *Peavler* litigation.

Progressive issued the J&S Policy to its named insured, J&S Exchange, Inc., with effective dates of August 21, 2013, to August 21, 2014. The J&S Policy did not identify the Dodge on the Declarations Page as an insured auto. The J&S Policy provides UM/UIM, Liability, Hired Auto Liability, and Employer's Non-Owned Auto Liability coverage, all with a combined single limit of $1,000,000. The J&S Policy also provides Medpay coverage in the amount of $5,000 per person. There is no dispute concerning the language set forth in the Fry Policy and the J&S Policy, though the parties disagree on how that language should be interpreted and applied.

## DISCUSSION

### A. Jurisdiction Over Progressive's Declaratory Judgment Action

Before the Court decides the issues presented by Progressive's Motion for Summary Judgment, it must address a jurisdictional issue first raised by Defendant Peavler in her Response to Progressive's Motion for Summary Judgment. Defendant Peavler points out that Defendant J&S, in the *Peavler* litigation, filed a motion to dismiss her Petition, which was denied. Asserting Progressive is in privity with Defendant J&S in the *Peavler* litigation,

Defendant Peavler argues the judicial declaration Progressive seeks with respect to the liability coverage provided by the J&S Policy "is inconsistent with the ruling of the state court." [Doc. No. 30] at p.1.

Defendant Peavler did not cite any authority in support of her argument that Progressive's request for a declaratory judgment would be "inconsistent with the ruling of the state court," nor has she expressly challenged this Court's jurisdiction over Progressive's declaratory judgment action at any time in the instant case. However, the Court is aware that "[a] judgment is void when a court enters it lacking subject matter jurisdiction or jurisdiction over the parties." *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1202 (10th Cir.1986) (citation omitted). Accordingly, in light of Defendant Peavler's suggestion that entry of judgment on Progressive's request for declaratory relief could conflict with a state court decision, the Court has elected to examine the propriety of its exercise of jurisdiction over this declaratory judgment action.

One of the primary functions of the Declaratory Judgment Act is to provide an insurance company a forum in which it can have its liability under an insurance policy determined. *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir.1978). This Court may exercise its discretion when determining whether to retain jurisdiction over Progressive's request for declaratory relief. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994). The Tenth Circuit has provided clear guidance on what factors a federal court should consider when deciding whether it will exercise jurisdiction over a complaint for declaratory relief when there is companion, parallel state court litigation in process:

This circuit has provided trial courts in its bailiwick with substantial guidance on this score, instructing them to weigh two questions originally supplied by Professor Borchard: Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding? If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so. [Citations omitted.]

*Mhoon* at 983.

The *Mhoon* court went on to adopt a list of five fact-intensive factors, initially articulated by the Sixth Circuit, which this Court should consider when determining whether it should exercise jurisdiction of Progressive's declaratory judgment action:

[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted).

Defendant Peavler implicates the fourth *Mhoon* factor, suggesting a decision by this Court would "increase friction between our federal and state courts and improperly encroach on state jurisdiction ... ." *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (citing *Mhoon* at 983). Defendant Peavler did not enter a copy of the state court order she referenced in the record. Nevertheless, this Court may take judicial notice "of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979). Further, this Court "may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment

substantially as they would be utilized at trial," and it may do so *sua sponte*. *Id.* (citation omitted).

The order denying Defendant J&S' motion to dismiss in the *Peavler* litigation, which was filed on January 16, 2018, does not reflect any ruling that would impact Progressive's request for a judicial determination of its rights and responsibilities under the liability coverage provided by the J&S Policy. The order simply recognizes the general legal principle that a motion to dismiss "should be granted when there appears, based on the allegations of the Petition taken in light of the law, that there is no possible way for relief to be granted." The order held that, "if taken as true, [Peaverl's Petition] indicates a basis for a respondeat superior claim against the Defendant, J&S Exchange, Inc." and "based on the evidence in the case at this time, the issues of the Petition have not been foreclosed."

The decision that Defendant Peavler's state court Petition should survive Defendant J&S' motion to dismiss is not an adjudicative declaration of any fact or legal issue which would be relevant to the relief sought by Progressive in its declaratory judgment action. Upon review of the record in the *Peavler* litigation, there is no order or ruling which would create friction between the District Court of Kay County, State of Oklahoma, and any ruling this Court may enter concerning Progressive's Motion for Summary Judgment.[2] Thus, the only *Mhoon* factor implicated by Defendant Peavler dictates in favor of this Court's retention of jurisdiction over this matter.

_____

[2]As this Court has determined there has been no ruling issued in the *Peavler* litigation that could result in any conflict or friction between it and the state court, Defendant Peavler's assertion that Progressive was "in privity" with Defendant J&S for purposes of Defendant J&S' state-court motion to dismiss is moot and need not be addressed.

Further, while Defendant Peavler did not raise any of the other *Mhoon* factors, this Court has considered them in the context of the record. Upon consideration of the evidence, the Court holds a ruling would settle the controversy before it in this matter – the nature and extent of insurance coverage owed by Progressive, if any, for the underlying accident and ensuing *Peavler* litigation. A decision on Progressive's declaratory judgment action would also clarify the legal relationship among the parties in this matter. Specifically, the Court shall determine whether Defendant J&S and Fry are considered insureds for purposes of the liability coverage provided by the J&S Policy, and will also determine whether Defendant Peavler is an insured under the J&S Policy for purposes of the UM/UIM and medpay coverages it provides. The first and second *Mhoon* factors, like the fourth, weigh in favor of this Court's exercise of jurisdiction over this matter.

Defendant Peavler has not presented any evidence that would suggest Progressive is using its declaratory judgment action "for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'." *Mhoon* at 983. In fact, the parties' joint request for a stay of deadlines in this matter reflects the opposite. They have advised the Court if it finds issues of material fact which preclude entry of summary judgment, these issues will be decided in the *Peavler* litigation.[3] [Doc. No. 43.] This demonstrates none of the parties are seeking to utilize this Court's determination of Progressive's request for declaratory relief to engage in procedural fencing, or obtain a ruling that can then be declared a *res judicata* determination of some factual or legal issue in the *Peavler* litigation. Finally, there is no

---

[3]These representations also reflect the parties have taken steps to avoid any friction between this Court's rulings and decisions made by the State Court.

indication in the record, or by any party, that "there is an alternative remedy which is better or more effective." *Mhoon* at 983. As such, the third *Mhoon* factor weighs in favor of this Court's exercise of jurisdiction over this matter, and there is no evidence the fifth *Mhoon* factor is relevant.

In light of the foregoing, it is appropriate for this Court to exercise jurisdiction over Progressive's declaratory judgment action.

**B.      Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is only "genuine" if "the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A key purpose of summary judgment is dispose of claims or defenses that are factually unsupported, and FED.R.CIV.P. 56(a) should be interpreted in a manner that facilitates this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). When considering a party's request for summary judgment, the Court will view the evidence in the light most favorable to the non-moving party. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir.2014). The non-moving party, though, must present sufficient evidence to require submission of the matter to the jury to survive summary judgment. *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir.2007).

**C.      Insurance Policy Construction and Interpretation**

The Court's jurisdiction over this matter originates pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).  As such, this Court interprets the insurance policies at issue in accordance with Oklahoma state law.  *Houston Gen. Ins. Co. v. Am Fence Co., Inc*., 115 F.3d 805, 806 (10th Cir.1997) (applying Oklahoma insurance law).  Oklahoma law is clear that an insurance policy is a contract subject to the rules of interpretation and application which govern contracts.  *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla.2002).  If an insurance policy is not ambiguous, it is interpreted according to the plain meaning of the language in the policy.  *VBF, Inc. v. Chubb Group of Insurance Companies*, 263 F.3d 1226, 1230 (10th Cir.2001).

Further, "[a] basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."  *Pitman v. Blue Cross and Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir.2000).  Finally, "[b]ecause interpretation of an unambiguous contract or insurance policy is a question of law for the Court, that interpretation is proper for summary judgment adjudication. The same applies to insurance policy exclusionary provisions ... ."  *Progressive Direct Ins. Co. v. Yousif*, 2010 WL 3959623, *2 (W.D.Okla.) (footnote and citations omitted).

**D.      The Fry Policy**

The Fry Policy states, unambiguously, that "[t]he limit of liability shown on the declarations page for liability coverage is the most we will pay regardless of the number of ... insured persons."  The limit of liability shown on the declarations page of the Fry Policy

is $25,000 per person. There is no question Fry is an insured under the Fry Policy. Defendant J&S, however, falls within the definition of an "insured person" under the Fry Policy "with respect only to vicarious liability for the acts or omissions" of Fry. Progressive has not sought a judicial determination as to whether Defendant J&S falls within the definition of an "insured person." Rather, it only seeks a judicial determination that the limit of liability coverage available under the Fry Policy is $25,000 per person.

Defendant Peavler did not present any evidence in opposition to Progressive's request for a judicial determination that the maximum amount of liability coverage available under the Fry Policy – irrespective of whether just Fry, or both Fry and Defendant J&S, are eventually deemed to fall within the scope of the definition of an "insured person" – is $25,000. As such, upon review of the undisputed facts and the arguments presented, this Court declares the maximum limit of liability coverage available under the Fry Policy for the underlying accident and/or the claims presented by Defendant Peavler in the *Peavler* litigation is $25,000 per person, regardless of how many "insured persons" exist.

E.      **The J&S Policy**

Progressive and Defendant Peavler have each cited to certain portions of the J&S Policy in support of their respective arguments. The language of the J&S Policy provisions relied upon by Progressive and Defendant Peavler is undisputed. Excerpts of Part I, Liability to Others of the main commercial auto policy form [Form 6912 (06/10)]; the Employer's Non-Ownership Liability Endorsement [Form 1890 (03/08)]; the Uninsured/Underinsured Motorist Coverage Endorsement [Form 2852 OK (06/11)]; and the Medical Payments

Coverage Endorsement [Form 4757 OK (11/04)] are at issue. The relevant provisions of the

J&S Policy, for purposes of all coverage questions at issue under that policy, are as follows:

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT – LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**.

\*        \*        \*

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A.        When used in Part I – Liability To Others, **insured** means:

1.        **You** with respect to an **insured auto**.

2.        Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

\*        \*        \*

(c)        The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed unless the **insured auto** is a **trailer** connected to a power unit that is an **insured auto**. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

\*        \*        \*

**EXCLUSIONS – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

\*     \*     \*

3.    **Worker's Compensation**
      Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

\*     \*     \*

Form 1890 (03/08)

## EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an auto that you do not own, lease, hire, rent, or borrow, and that is used in connection with your business. This includes **autos** owned by **your** employees, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business or your personal affairs.

## CHANGES TO PART I - LIABILITY TO OTHERS

The definition of **insured auto** is modified to include a **non-owned auto**. The definition of **insured** does not include the owner of a **non-owned auto**.

14

*     *     *

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED**.

*     *     *

Form 2852 OK (06/11)

## UNINSURED/UNDERINSURED MOTORIST COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** because of **bodily injury**:

1.     sustained by an **insured**;
2.     caused by an accident; and
3.     arising out of the ownership, maintenance, or use of an **uninsured auto**.

*     *     *

### ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:
1.     "**Insured**" means:

*     *     *

      b.     if the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person:

            (I)     any person **occupying your insured auto** or **temporary substitute auto**

\*    \*    \*

2.    "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not owned by or furnished for the regular use of the named insured's spouse or **relative**.

\*    \*    \*

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

\*    \*    \*

Form 4757 OK (11/04)

## MEDICAL PAYMENTS COVERAGE ENDORSEMENT

Except as specifically modified in this Endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### INSURING AGREEMENT

Subject to the Limits of Liability, if you pay the premium for Medical Payments Coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of bodily injury:
1.    sustained by an **insured**;
2.    caused by an **accident**; and
3.    arising out of the ownership, maintenance or use of a motor vehicle or **trailer**.

\*    \*    \*

### ADDITIONAL DEFINITIONS

When used in this Endorsement, whether in the singular, plural, or possessive:
1.    "**Insured**" means:

\*    \*    \*

      b.      if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto, temporary substitute auto,** or **trailer** while attached to an **insured auto**.

2.      "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a person, not **owned** by or furnished for the regular use of the named insured's non-resident spouse or a **relative**.

*     *     *

**<u>EXCLUSIONS</u> - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

      Coverage under this Endorsement does not apply to **bodily injury**:

*     *     *

2.      occurring during the course of employment if workers' compensation coverage should apply;

*     *     *

9.      sustained by any person while **occupying** a **non-owned vehicle** without the express or implied permission of the **owner**;

*     *     *

**ALL OTHER TERMS, LIMITS AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

The Liability to Others, Employer's Non-Ownership Liability; Uninsured/Underinsured Motorist; and the Medical Payments coverages are all identified separately, with separately-identified limits and premium charges, on the Declarations Page. Similarly, the main policy form and the forms that "modif[y] the contract" (endorsements)

are identified separately by form number on the Declarations Page. Additionally, the Declarations Page of the J&S Policy states, "Your insurance policy and any policy endorsements contain a full explanation of your coverage."

### 1. Uninsured/Underinsured Motorist Coverage

Progressive points out that in order to qualify as an "insured" for purposes of the uninsured/underinsured motorist ("UM/UIM") coverage provided by the J&S Policy, Richter would have had to have been "occupying your insured auto or temporary substitute auto." It is undisputed the Dodge Fry owned, and was driving, was not listed on the Declarations Page of the J&S Policy, nor did it fall within the definition of "your insured auto" or a "temporary substitute auto." As such, Progressive maintains Richter does not fall within the definition of an "insured" for purposes of the UM/UIM coverage provided by the J&S Policy and no UM/UIM coverage is owed under the J&S Policy for Richter's death.

In response, Defendant Peavler argues the "reasonable expectations doctrine" applies to the question of whether UM/UIM coverage is owed by Progressive under the J&S Policy. The Oklahoma Supreme Court has expressly adopted the "reasonable expectations doctrine." *Max True Plastering Co. v. USF&G Co.*, 912 P.2d 861 (Okla.1996). In *Max True Plastering*, the party seeking coverage filed suit against USF&G Co., and specifically asserted the bases demonstrating its reasonable expectation that coverage existed for a denied loss. *Id.* at 863. As recognized by the Tenth Circuit, "the reasonable expectations doctrine permits a court to reform a contract to honor the objectively reasonable expectations of the parties 'even though painstaking study of the policy provisions might have negated those expectations.'" *Roberts v. Farmers Ins. Co.*, 201 F.3d 448, *1 (10th Cir.1999) (citation

omitted) (unpublished). In order for UM/UIM coverage under the J&S Policy to be afforded to Defendant Peavler under the "reasonable expectations doctrine," she must demonstrate Defendant J&S (1) had a reasonable expectation UM/UIM coverage would be afforded to Richter while Richter was a passenger in a vehicle Defendant J&S did not own, and which was not identified as an "insured auto" on the J&S Policy, and (2) the definition of "non-owned auto" set forth in the UM/UIM Coverage Endorsement is ambiguous. *Max True Plastering at* 870 ("Today, we hold that the doctrine of reasonable expectations may be applicable to the interpretation of insurance contracts in Oklahoma, and that the doctrine may apply to ambiguous contract language ... ."). If Defendant Peavler shows there is no genuine issue of material fact as to these two elements, the ambiguity she identifies must be resolved in her favor. *Id.*

Progressive acknowledges the "reasonable expectations doctrine" is the law of Oklahoma. However, it argues the "reasonable expectations doctrine" is an affirmative defense Defendant Peavler was required to plead. It is undisputed Defendant Peavler did not assert the "reasonable expectations doctrine" as an affirmative defense. Progressive did not cite any published Oklahoma precedential or persuasive authority that specifically states the "reasonable expectations doctrine" must be affirmatively pleaded.[4] Under both federal law and Oklahoma state law, however, if an affirmative defense is not pleaded, it is waived. *Racher v. Westlake Nursing Home Limited Partnership*, 871 F.3d 1152, 1167 (10th Cir.2017).

---

[4]In the *Max True Plastering* case, the "reasonable expectations doctrine" was affirmatively pleaded by the party seeking its application. *Max True Plastering, supra* (the party seeking coverage filed suit against USF&G Co., specifically alleging the bases upon which it asserted its reasonable expectation was that coverage existed for a denied loss).

*See also RST Service Mfg., Inc. v. Musselwhite*, 628 P.2d 366, 368 (Okla.1981) (citation omitted).

Progressive also cites Oklahoma Supreme Court authority which address whether insurance contracts should be reformed based on ambiguities in the policy language, the expectations of the insured, or mutual mistake. *See*, generally, *Haggard v. Calhoun*, 294 P.2d 836 (Okla.1956), *American Motorists Ins. Co. v. Biggs*, 380 P.2d 950 (Okla.1963), and *Carraco Oil Co. v. Mid-Continent Cas. Co.*, 484 P.2d 519 (Okla.1971). In reliance on these decisions, Progressive argues a key pre-*Max True Plastering* principle of Oklahoma law is that any allegation an insurance policy should be reformed due to the presence of ambiguous terms, the expectations of the insured, or mutual mistake must be affirmatively pleaded. *See Haggard* at 839 ("[I]n an action to reform a written contract on the ground that it differs from the agreement of the parties, either fraud, mutual mistake or accident **must be alleged** and proven.") (bold emphasis added). *See also Albert & Harlow, Inc. v. Fitzgerald,* 389 P.2d 994, 996-997 (Okla.1964) ("Before testimony could be admissible to prove that the written contract was entered into through fraud, accident or mistake, which would constitute an affirmative defense, it was necessary for defendant to plead fraud, accident or mistake.")[5]

In support of its argument Defendant Peavler has waived her right to assert the "reasonable expectations doctrine," Progressive also relies upon FED.R.CIV.P. 12(b), which states, "Every defense to a claim for relief in any pleading must be asserted in the responsive

---

[5]The Oklahoma Supreme Court, in *Albert and Harlow, Inc*., found that as the defendant had not affirmatively pleaded fraud, accident, or mistake in his answer, evidence of discussions between defendant and the plaintiff's salesman was inadmissible to vary the terms of the written contract at issue. *Albert & Harlow, Inc.*, at 997.

pleading if one is required." Though Progressive did not cite this authority, FED.R.CIV.P. 8(c) is also relevant, as it states, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense ... ." The Rule goes on to list eighteen affirmative defenses that are "includ[ed]" in those defenses a party must affirmatively assert. None of the enumerated exemplary affirmative defenses are "reformation," but "estoppel," "fraud," and "waiver" are listed. FED.R.CIV.P. 8(c).[6] The list of affirmative defenses that must be asserted in a responsive pleading identified in FED.R.CIV.P. 8(c), however, is not exhaustive. *Racher* at 1163 (citation omitted).

Progressive maintains that as the Tenth Circuit has recognized the purpose of the "reasonable expectations doctrine" is "**to reform a contract** to honor the objectively reasonable expectations of the parties," (*Roberts*, *supra*, *1, emphasis added) and as Oklahoma law demonstrates "in an action **to reform a written contract on the ground that it differs from the agreement of the parties**, either fraud, mutual mistake or accident **must be alleged** and proven," (*Haggard, supra*, at 839, emphasis added), the "reasonable expectations doctrine" is an affirmative defense which Defendant Peavler was required to plead in her Answer. Progressive further maintains that, as Defendant Peavler did not assert this affirmative defense prior to filing her Response to its Motion for Summary Judgment, she has waived this affirmative defense.

---

[6]Like its federal counterpart, the Oklahoma Pleading Code also requires that an affirmative defense be pled and identifies fraud, estoppel, and waiver as affirmative defenses. 12 O.S. § 2008(C). This Oklahoma statute also requires a party to affirmatively set forth "[a]ny other matter constituting an avoidance or affirmative defense." *Id.*

The Court agrees with Progressive. The "reasonable expectations doctrine," the purpose of which is to reform the written terms of an insurance contract, is an affirmative defense. As such, Defendant Peavler was required to assert the doctrine as an affirmative defense in her Answer and her failure to do so has resulted in a waiver of the defense.

Even had Defendant Peavler properly pleaded the affirmative defense of the "reasonable expectations doctrine," however, it would not serve to create UM/UIM coverage under the J&S Policy. As stated by the Oklahoma Supreme Court, "Under the doctrine, **if the insurer or its agent creates a reasonable expectation of coverage in the insured** which is not supported by policy language, the expectation will prevail over the language of the policy." *Max True Plastering* at 864 (bold emphasis added). Defendant Peavler asserts, without evidentiary support, that "[i]t would be reasonable for J&S to understand that a UM/UIM Endorsement which included a definition of non-owned auto would cover a person occupying a non-owned auto."[7] This unsupported statement is not evidence. *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1061 (10th Cir.2009) (citation omitted) ("[T]he argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment.") and *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir.2004) (citation omitted) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). Defendant Peavler has

_____

[7]This also demonstrates why Defendant Peavler was required to assert the "reasonable expectations doctrine" as an affirmative defense and why Progressive and Defendant J&S were prejudiced by her failure to do so. The other parties in this matter were not given notice that (1) evidence of J&S' "reasonable expectations" concerning the coverage provided by the J&S Policy would be relevant to any issue or (2) any provisions of the J&S Policy were, according to Defendant Peavler, ambiguous. As such, neither Progressive nor Defendant J&S had any opportunity prior to the dispositive motion deadline to seek discovery regarding or form any response to these issues.

presented no evidence that Defendant J&S (or Richter) had any expectation – much less a reasonable expectation – that the UM/UIM coverage provided by the J&S Policy would be available to a person riding in a vehicle that was neither listed on the J&S Policy nor owned by Defendant J&S.

Even if there was some evidence before this Court concerning Defendant J&S' "reasonable expectations" about the UM/UIM coverage provided by the J&S Policy, Defendant has failed to demonstrate the UM/UIM coverage provided by that policy contains any ambiguous terms. Defendant Peavler attempts to apply the terms of the Employer's Non-Ownership Liability Endorsement to expand the UM/UIM coverage provided by the UM/UIM Coverage Endorsement of the J&S Policy. The title of the Employer's Non-Ownership Liability Endorsement clearly reflects it is a "Liability Endorsement." By express terms set forth in bold, capital letters, the Employer's Non-Ownership Liability Endorsement states "**CHANGES TO PART I – LIABILITY TO OTHERS**" and also specifically sets forth that "**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED**."

Defendant Peavler has not demonstrated any ambiguity exists in the J&S Policy. Rather, she urges exactly the type of "forced and constrained" interpretation *Max True Plastering* expressly precludes. *Max True Plastering* at 869. While no Oklahoma court has addressed the argument presented by Defendant Peavler, it has been addressed in *Babin v. GEICO Cas. Co.*, 2012 WL 4335467, 2012-0221 (2012) (unpublished). The *Babin* Court's analysis and rejection of the exact argument Defendant Peavler has made in an attempt to create UM/UIM coverage where none exists is instructive:

Since the named insured (Hub) is a corporation, the UM endorsement clearly indicates that in order for "any person" to be an insured, they must be occupying "your insured auto" or a "temporary substitute auto." It is undisputed that Ms. Dick's personal vehicle was not a temporary substitute auto for Hub. Furthermore, the general definition section of Progressive's policy provides that "**your insured auto**" means "[a]ny **auto** specifically described on the **Declarations Page**, unless **you** have asked **us** to delete that **auto** from the policy." The record reflects that Ms. Dick's personal vehicle was not listed or specifically described on the declarations page of the policy. Thus, Ms. Dick was not occupying an insured auto at the time of the accident and she is not considered an insured under the policy for UM purposes. The Progressive policy unambiguously limits UM coverage to those persons occupying vehicles specifically listed on the policy's declarations page.

Ms. Dick contends, however, that Progressive's policy provides UM coverage due to another endorsement that modifies and expands the general definition of "insured auto" in a section titled "**EMPLOYERS' NON–OWNERSHIP LIABILITY ENDORSEMENT**." We disagree with Ms. Dick's interpretation of that particular endorsement. ...

*        *        *

The employer's non-ownership *liability* endorsement modifying the definition of an "insured auto" is expressly and unambiguously limited to Part 1 of the policy, which is the "**LIABILITY TO OTHERS**" section. This endorsement does not apply to the UM endorsement provisions in Progressive's policy. Accordingly, the UM endorsement section of Progressive's policy is not expanded beyond the general definition of "insured auto," which requires that the vehicle be specifically described on the declarations page of the policy.

*Babin* at *3-4 (italics and bold emphasis in original, footnote omitted).

Similarly, there is no ambiguity in the J&S Policy concerning whether Richter qualified as an "insured" for purposes of the UM/UIM coverage. The J&S Policy unambiguously dictates he did not.

Finally, Defendant Peavler has failed to demonstrate Oklahoma public policy requires the J&S Policy to provide UM/UIM coverage for the death of Richter. Defendant Peavler acknowledges Oklahoma law permits an employer with a commercial automobile policy to

limit UM/UIM coverage to company-owned vehicles. *See Graham v. Travelers Ins. Co.*, 61 P.3d 225, 230 (Okla.2002) ("CKE and Travelers are free to exclude employees operating their own vehicles from UM/UIM coverage through the method of limiting UM/UIM coverage to vehicles owned by the company. No public policy is violated by such a limitation.") No published Oklahoma decision has abrogated, or limited the holding of *Graham*. Defendant Peavler suggests, however, that the Oklahoma Supreme Court's decision in *Ball v. Wilshire Ins. Co.*, 221 P.3d 717 (Okla.2009) demonstrates that because Richter was not riding in a vehicle he owned, the facts of this matter may prompt the Oklahoma Supreme Court to revisit the holding of *Graham*.

As Progressive points out, the *Ball* Court commented on the *Graham* decision, stating, "the critical factor in upholding the UM coverage restriction appeared to be Graham's ownership of his own vehicle." *Ball* at 728 (emphasis added). It is true Richter did not own the vehicle he was in at the time of the underlying accident – Fry did. There is no evidence before the Court as to whether Richter was the owner of any vehicle; whether he had an opportunity to purchase UM/UIM coverage; whether he was an insured under any other policy of UM/UIM coverage at the time of the July 7, 2014, accident; or whether Defendant Peavler received UM/UIM benefits from any other insurer as a result of Richter's death.[8] As

---

[8]While Progressive did not argue Defendant Peavler was required to assert UM/UIM coverage existed under the J&S Policy by operation of Oklahoma law and/or public policy as an affirmative defense, the Court notes that Defendant Peavler's public policy argument requires evidentiary support. Specifically, Defendant Peavler's argument requires evidence as to whether Richter was covered by any other policy of UM/UIM coverage. Defendant Peavler's failure to assert her "public policy" defense before she filed her Response to Progressive's Motion for Summary Judgment prevented the other parties from obtaining any evidence relevant to this issue or developing any response to this defense before the dispositive motion deadline.

such, there is no evidence in the record to support Defendant Peavler's argument, and there is no issue of material fact present in regard to the issue of whether Oklahoma public policy requires the J&S Policy to provide UM/UIM coverage for Richter's death – as a matter of law, it does not.[9]   Accordingly, Progressive owes no UM/UIM coverage to Defendant Peavler under the J&S Policy.

## 2.      Medical Payments Coverage

Defendant Peavler did not assert the "reasonable expectations doctrine" as an affirmative defense to Progressive's request for a judicial determination that it owes no medpay coverage under the J&S Policy.  As such, she has waived this affirmative defense just as she waived it with respect to Progressive's request for a judicial determination that it owes no UM/UIM coverage under the J&S Policy.

Even had Defendant Peavler asserted the "reasonable expectations doctrine" as an affirmative defense in her Answer, she has failed to demonstrate that doctrine requires Progressive to provide medpay coverage under the J&S Policy.  Defendant Peavler has presented no evidence regarding Defendant J&S' expectations concerning the medpay coverage provided by the J&S Policy.  Further, just as the Employer's Non-Ownership Liability Endorsement does not serve to amend the provisions of the UM/UIM Coverage Endorsement, it does not serve to amend the provisions of the Medpay Coverage

---

[9]Progressive also argues that in the event Oklahoma public policy requires provision of UM/UIM coverage under the J&S Policy, it is only required to provide $25,000 of UM/UIM coverage – the statutory UM coverage amount.  While the Court agrees with this proposition, its determination that Oklahoma public policy does not require Progressive to provide UM/UIM coverage under the J&S Policy moots the issue.  *See Roe v. Harco National Insurance Company*, 2017 WL 5618283, *3 (N.D.Okla.).

Endorsement. Accordingly, Progressive owes no medpay coverage to Defendant Peavler under the J&S Policy.

**3.     Liability Coverage**

Progressive has stipulated for purposes of its Motion for Summary Judgment that the Dodge, which is not listed on the Declarations Page of the J&S Policy, is a "non-owned" auto as that term is defined by the Employer's Non-Ownership Liability Endorsement. The Employer's Non-Ownership Liability Endorsement – which only amends the PART I – LIABILITY TO OTHERS section of the J&S Policy – specifically adds "non-owned auto[s]" to the definition of "insured auto[s]" for purposes of liability coverage, only. It is therefore undisputed for purposes of Progressive's Motion for Summary Judgment that the Dodge Fry owned and was driving on July 7, 2014, falls within the definition of an "insured auto" under the liability coverage provided by the J&S Policy. The Employer's Non-Ownership Liability Endorsement's definition of "non-owned auto" also contains the following language: "The definition of **insured** does not include the owner of a **non-owned auto**." Therefore, this Court finds that Fry does not fall within the definition of an "insured" for purposes of the liability coverage provided by the J&S Policy. Defendant J&S is the only entity and/or person who falls within the definition of an "insured" for purposes of the liability coverage provided by the J&S Policy.[10]

The only liability claim Defendant Peavler has asserted against Defendant J&S in the *Peavler* litigation is one of *respondeat superior*. There is no allegation Defendant J&S,

---

[10]Progressive set forth these points in its Motion for Summary Judgment, and Defendant Peavler did not address them in her Response to Progressive's Motion for Summary Judgment.

itself, is responsible for the death of Richter under any direct theory of liability. Rather, Defendant Peavler has alleged Defendant J&S is vicariously liable for the acts of Fry, who Defendant Peavler asserts was acting within the course and scope of his employment by Defendant J&S at the time of the underlying accident.

Progressive acknowledges there are genuine issues of fact present as to whether Fry and/or Richter were acting within the course and scope of their employment at the time of the underlying accident. It further concedes that the presence of these genuine issues of fact are material to and preclude this Court from deciding the question of whether Exclusions 5 and/or 6 of the PART I – LIABILITY TO OTHERS coverage serve to exclude the liability coverage provided by the J&S Policy. According to Progressive, however, even presuming the factual scenario presented by Defendant Peavler in the *Peavler* litigation exists – in which Fry was acting in the course and scope of his employment and Richter was not acting in the course and scope of his employment – this Court can determine as a matter of law that the liability coverage provided by the J&S Policy is barred by Exclusion 3.

Exclusion 3 reads as follows:

3. **Worker's Compensation**
   Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

Exclusion 3 does not violate Oklahoma public policy.[11] Motor vehicle insurance liability policies in Oklahoma "need not insure any liability under any workmen's

_____

[11]Defendant Peavler makes no argument Exclusion 3 violates Oklahoma public policy governing mandatory automobile liability insurance.

compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such vehicle ... ." 47 O.S. § 7-324(C). *See also Deffenbaugh v. Hudson*, 791 P.2d 84, 86 (Okla.1990) ("[A]utomobile liability insurers are not obligated by law to protect their insureds against responsibility which falls within the workers' compensation reparations regime. The terms of 47 O.S.1981 § 7–324(f) clearly *relieve* insurers of any legal obligation to include in the standard motor vehicle liability policy a provision for indemnity against *employment-related* harm.") (italics emphasis in original). Oklahoma federal district courts have recognized automobile liability exclusions like Exclusion 3 comply with Oklahoma public policy – even if the insured under the automobile liability policy did not have workers' compensation coverage in place. *Colony Ins. Co. v. Jackson*, 2010 WL 4117423 (N.D.Okla.) ("*Colony I*"); *Colony Ins. Co. v. Jackson*, 2011 WL 2118728 (N.D.Okla.) ("*Colony II*"); and *Allstate Fire and Casualty Ins. Co. v. Adame*, 2017 WL 5617071 (W.D.Okla.).

Progressive first argues that if the question of whether Fry was acting within the course and scope of his employment with Defendant J&S at the time of the accident is answered in the negative, then it is legally impossible that Defendant J&S could be vicariously liable for Fry's actions. Under this scenario, no liability coverage would be available to Defendant J&S because it would not be liable for Fry's negligence. Defendant Peavler neither addresses nor disputes this scenario. The Court agrees that in this factual scenario, no liability coverage would be owed under the J&S Policy. If it is determined Fry was acting outside the course and scope of his employment with Defendant J&S, any

personal liability he may have for Richter's death is not covered by the J&S Policy, as Fry is not an insured under that policy. Additionally, no coverage would be owed by Progressive under the J&S Policy in this scenario, as no liability could legally attach to Defendant J&S.[12]

Progressive also addresses the possibility that Fry could be found to have been acting within the course and scope of his employment with Defendant J&S, which is what Defendant Peavler maintains the facts will demonstrate.[13] Progressive argues that if Fry was acting in the course and scope of his employment at the time of the underlying accident, he is statutorily immune from civil liability under the Administrative Workers Compensation Act (the "AWCA"). In support of this position, Progressive relies upon various provisions of the AWCA:

> The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death. Negligent acts of a co-employee may not be imputed to the employer. ...

85A O.S. §5(A).

> The immunity from civil liability described in subsection A of this section shall apply regardless of whether the injured employee is denied compensation or deemed ineligible to receive compensation under this act.

---

[12]*See, Roberts v. H-40 Drilling, Inc.*, 501 Fed.Appx. 759 (10th Cir.2012) (unpublished) (applying Oklahoma law concerning an employer's vicarious liability for an employee where employee caused car accident and finding that as employee was not in course and scope of employment, employer could not, as a matter of law, bear *respondeat superior* liability for employee's actions).

[13]This factual determination is at issue and will be made in the context of the *Peavler* litigation, either by way of dispositive motion or jury verdict.

85A O.S. §5(C).

Progressive argues these provisions of the AWCA provide Fry and Defendant J&S statutory immunity from civil liability for Richter's death even if, as Defendant Peavler alleges, Richter was not acting within the course and scope of his employment with Defendant J&S at the time of the underlying accident.[14] Defendant Peavler counters by arguing Fry and Defendant J&S only enjoy the statutory immunity provided by the AWCA if Richter was acting within the course and scope of his employment when he was killed. According to Defendant Peavler, it is only if Richter was acting in the course and scope of his employment that he would be entitled to the rights and remedies provided by the AWCA. Defendant Peavler's position is that the exclusivity provisions of the AWCA – and the statutory immunity from civil liability it provides to Fry and Defendant J&S – are only implicated if Richter was acting in the course and scope of his employment with Defendant J&S when he was killed.

Neither Progressive nor Defendant Peavler fully address the language of Exclusion 3 of PART I – LIABILITY TO OTHERS of the J&S Policy in context with the relevant provisions of the AWCA and the facts of this matter. Exclusion 3 bars liability coverage for "[a]ny obligation for which an insured or an insurer of that insured, even if one does not exist, **may be** held liable under workers' compensation ... law." (Emphasis added.) As noted above, Fry does not fall within the definition of an "insured" for purposes of Exclusion 3; only Defendant J&S is considered an "insured" under the liability coverage provided by the

---

[14]If Fry enjoys statutory immunity from civil prosecution under the AWCA, his employer and Progressive's insured, Defendant J&S, also enjoys the same statutory immunity pursuant to 85A O.S. §5(A).

J&S Policy. As such, the issue of whether Exclusion 3 serves to bar liability coverage will depend on whether the claims asserted by Defendant Peavler in the *Peavler* litigation are an "obligation" for which Defendant J&S "**may be** held liable under worker's compensation ... law." (Emphasis added.) The key issue before the Court is whether Exclusion 3 requires a determination that Defendant J&S was, *in fact*, "liable under workers' compensation ... law" for Richter's death. This Court holds no such determination is necessary, as the plain language of Exclusion 3 shows no such determination of fact is necessary.

The unambiguous language of the exclusion bars coverage for any "obligation" for which Defendant J&S "**may be** held liable under workers' compensation ... law." (Emphasis added.) This exclusion is distinguishable from the two other employment-related exclusions set forth in the J&S Policy:

5. **Employee Indemnification and Employer's Liability Bodily injury** to:

    a.    An employee of any **insured** arising out of or within the course of:
        (I)    That employee's employment by any **insured**; or
        (ii)    Performing duties related to the conduct of any **insured's** business; or
    b.    The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

    *     *     *

6. **Fellow Employee Bodily** injury to:

    a.    a fellow employee of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
    b.    the spouse, child, parent, brother, or sister of that fellow employee as a consequence of Paragraph a. above.

The applicability of these two exclusions requires certain determinations of fact Exclusion 3 does not require. Exclusion 5 first requires a factual determination as to whether the injured person "an employee of any insured." If that fact is proven, then the exclusion only applies if the injury was caused by an incident "arising out of or within the course of" the injured person's "employment by any insured" or while "performing duties related to the conduct of any insured's business." Similarly, Exclusion 6 first requires a factual determination as to whether the injured person was "a fellow employee of an insured." If that fact is proven, then Exclusion 6 only applies if it is also determined that the injured person was "injured while within the course of their employment or while performing duties related to the conduct of" the named insured's business.

Exclusion 3 is broader than both Exclusion 5 and 6. The only determination of fact required by Exclusion 3 is whether Defendant J&S "**may be** held liable under workers' compensation ... law" for the "obligation" that, in this case, is liability for Richter's death. As a matter of law, there is no genuine issue of material fact present that precludes the Court from making this determination. This Court does not need to decide whether Richter was acting in the course and scope of his employment with Defendant J&S at the time of the underlying accident, nor does it need to determine whether Defendant J&S would have been liable under the AWCA if Defendant Peavler had chosen to submit a workers' compensation claim as a result of Richter's death.[15] It must only determine whether Defendant J&S may

---

[15]The briefing on Progressive's Motion for Summary Judgment does not include a statement of undisputed material fact concerning whether a workers' compensation claim was ever presented as a result of Richter's death. However, the remainder of the record reveals no such workers' compensation claim was ever submitted to the Workers' Compensation Commission. In fact, the foundation of Defendant Peavler's pursuit of recovery against Defendant J&S is that Richter was

have been liable under the AWCA if Defendant Peavler had chosen to pursue a workers' compensation claim.

Oklahoma law demonstrates Defendant J&S "**may be** held liable under workers' compensation ... law" for Richter's death. (Bold emphasis added.) It is true the general rule in Oklahoma is that "an injury suffered by an employee in going to and returning from his regular place of work does not arise out of and in the course of his employment so as to be compensable under Workmen's Compensation Law, in the absence of an agreement or contract to the contrary." *Weatherbee Elec. Co. v. Duke*, 294 P.2d 298, 301 (Okla.1955). This general rule is codified in the current version of the AWCA,[16] and was codified in the 2011 version of the Workers' Compensation Code.[17] Even though provisions of the various incarnations of the workers' compensation statutory schemes that have been enacted in Oklahoma have attempted to exclude from the definition of a "compensable injury" one which is sustained while an employee is traveling to or from work, the Oklahoma workers' compensation tribunals and Oklahoma courts have often found such injuries compensable.

For instance, most recently, the Oklahoma Supreme Court found that a pipeliner who was leaving a gas station to travel to a job worksite and was involved in a car accident while in transit was acting in the course and scope of his employment. *Pina v. American Piping*

---

not acting in the course and scope of his employment, and she, therefore, was not obligated to present a workers' compensation claim.

[16] See 85A O.S. §13(a) and (b)

[17] See 85 O.S. 2011 § 312 (repealed)

*Inspection, Inc.*, — P.3d —, 2018 OK 40.[18]  The injured party in *Pina* presented a workers' compensation claim under the current version of the AWCA,[19] which contains the following provisions:

> 13.  "Course and scope of employment" means an activity of any kind or character for which the employee was hired and that relates to and derives from the work, business, trade or profession of an employer, and is performed by an employee in the furtherance of the affairs or business of an employer. The term includes activities conducted on the premises of an employer or at other locations designated by an employer and travel by an employee in furtherance of the affairs of an employer that is specifically directed by the employer. This term does not include:
>
> a.  an employee's transportation to and from his or her place of employment,
>
> b.  travel by an employee in furtherance of the affairs of an employer if the travel is also in furtherance of personal or private affairs of the employee,

85A O.S. § 13(a) and (b).

Pina was injured in a single-car accident while driving from a gas station where he had stopped while traveling the 130 miles from his home to the job site.  The Administrative Law Judge denied Pina's claim for workers' compensation benefits, finding he had not sustained a compensable injury under the AWCA.  This decision was upheld by the Workers'

---

[18]This case was not decided until May 8, 2018, which was after the briefing on Progressive's Motion for Summary Judgment was complete.

[19]Richter's death occurred on July 7, 2014.  The current workers' compensation statutory scheme, the AWCA, went into effect on February 1, 2014.  "The date of injury has long been the point in time in workers' compensation cases when rights of the parties become established, including when a claim must be filed; which law to use for determining benefits, and a schedule of compensation to determine the amount of benefits a claimant is entitled to receive." *Williams Co., Inc. v. Dunkelgod*, 295 P.3d 1107, 1111 (Okla.2012).

Compensation Commission and the Oklahoma Court of Civil Appeals, which "determined that [Pina's] injuries occurred while he was driving from his permanent residence to the job site and as such were excluded from coverage and not a compensable injury. The Court of Civil Appeals also determined that the trip from the gas station to the rig drilling site was a *dual purpose trip* and as such was excluded under 85A O.S. Supp. 2013 § 2 (13) (b)." *Pina* at *3. The Oklahoma Supreme Court overturned the lower courts and found Pina's injuries had been sustained in the course and scope of employment on the basis of the following facts:

> (1) Employer's representative designated the specific gas station and time for stopping; (2) Petitioner stopped at the gas station for the purpose of filling his gas tank to be used at the work site; (3) the Supervisor acknowledged that Petitioner was "reporting to work that morning when he made it to the gas station;" (4) Petitioner left the gas station with the permission of his supervisor to proceed to the work site; (5) Employer paid for the gas used in Petitioner's truck to haul equipment and supplies at the work site, but only if Petitioner stopped at the designated gas station; (6) Employer paid for water and ice for Petitioner and other employees but only if they stopped as designated by Employer; (7) there were no stores within walking distance of the work site for employees to obtain gasoline or ice and water; (8) Petitioner testified that he left the gas station that morning to drive to the rig drilling site; and (9) there is no evidence in the record that Petitioner said he was leaving the gas station to take a nap.

*Pina* at *5 (footnote omitted).

The *Pina* Court cited to four pre-AWCA cases that had interpreted prior workers' compensation statutory schemes when determining whether an injury sustained while traveling to or from work was compensable. *Pina* at *5 and FN12 (citing *Helmerich & Payne, Inc. v. Gabbard*, 333 P.2d 964 (Okla.1958); *Ince v. Chester Westfall Drilling Co.*, 346 P.2d 346, 348, (Okla.1959); *Haco Drilling Co. v. Burchette*, 364 P.2d 674 (Okla.1961);

and *Skinner v. Braum's Ice Cream Store*, 890 P.2d 922 (Okla.1995) in support of the statement, "We have long recognized that hauling ice and water to an oilrig drilling site is considered "material being hauled for the employer.").  It then went on to state:

> We reject Employer's argument that [Pina] was simply traveling to and from his place of employment at the time of injury. We likewise find no evidence in the record that the travel by [Pina] was for a "dual purpose." ... He arrived at the gas station at the appointed location and time to obtain gas, so he could work all day without stopping, all for the benefit of the Employer. We conclude that [Pina's] travel that morning was for the sole benefit of his Employer. Accordingly, his accident is a covered event under the AWCA as being in the course and scope of his employment.

*Pina* at *6.

Neither party cited any Oklahoma authority that interpreted or applied the current AWCA.  Similarly, there is no citation by either party to any Oklahoma case addressing the issue of whether an employee-passenger injured in a car accident may pursue a tort claim against a co-employee-driver, or if such tort claim is barred by the AWCA's exclusivity provision.  Progressive relied primarily on a Kansas case, *Scott v. Hughes*, 275 P.3d 890 (Kan.2012), in support of its argument that Fry – and, therefore, Defendant J&S – were statutorily immune from civil liability.[20]  Progressive cited *Scott* in support of this argument, pointing out that the Kansas Supreme Court held passengers in a car could not pursue a tort claim against their co-employee-driver regardless of whether those passengers were acting in the course and scope of their employment at the time of the underlying accident – because

---

[20]According to Progressive, if the civil immunity provided by the AWCA's exclusivity provision applies to Fry, Exclusion 3 serves to bar coverage because Defendant J&S then "may be held liable under workers' compensation ... law."

the co-employee-driver was acting in the course and scope of his employment, the exclusivity provisions of Kansas' statutory workers' compensation scheme applied.

Defendant Peavler maintains *Scott* is not applicable because the passengers in that case had already been deemed to have been acting in the course and scope of their employment in previous proceedings and had received workers' compensation benefits. According to Defendant Peavler, the "actual teaching" of *Scott* is "[a]n employee who has suffered 'any injury for which compensation is recoverable under the workers compensation act' is limited to the act and a fellow employee as well as the employer is immune from civil suit." *See* [Doc. No. 30] at p.12. She then cites to Oklahoma jurisprudence discussing the "Grand Bargain" of workers' compensation – a worker's relinquishment of the right to recover from his or her employer under a tort theory of negligence if he or she is injured on the job in exchange for the employer's guarantee of wage and medical benefits if the employee is injured in the course and scope of employment. See [Doc. No. 30] at pp.13-15.

Defendant Peavler argues that Progressive's reliance on 85A O.S. § 5(c) in support of its position that the statutory immunity Fry and Defendant J&S enjoy (which would demonstrate Defendant J&S "may be held liable under workers compensation ... law" and Exclusion 3, therefore, applies) is an absurd interpretation of the statute which violates the "Grand Bargain." Progressive's suggested interpretation of 85A O.S. § 5, says Defendant Peavler, would "mean that if an employee does not qualify for compensation because his injuries do not arise out of and in the course of employment he nevertheless cannot sue his employer or co-employee in tort and is left without any remedy." *See* [Doc. No. 30] at p.16. Defendant Peavler proposes that the meaning of 85A O.S. § 5(c) is if "the plaintiff has a

colorable claim for compensation, beginning with the fact that the injury is work-related, but is somehow prevented from asserting his claim," it is only then the plaintiff's employer and/or co-employee are statutorily immune from civil liability.[21]

The Court agrees with Defendant Peavler's interpretation of 85A O.S. § 5. The Court also finds Richter's death was, as she describes it, a "colorable claim for compensation" under the AWCA. This is not a factual determination Richter was acting in the course and scope of his employment at the time of the underlying accident. It is a legal determination that the undisputed facts demonstrate, under Oklahoma law, Richter may have been acting in the course and scope of his employment. The Court also agrees with Defendant Peavler that *Scott* is distinguishable from this matter because the passengers in that claim had submitted workers' compensation claims and received workers' compensation benefits. This distinction, however, proves – under Kansas law – a sleeping passenger simply riding in a vehicle and receiving no pay for travel time may be determined to have been acting in the course and scope of his or her employment and have sustained a compensable injury. *Scott* at 421-422.

Defendant Peavler's decision to forego presentation of a workers' compensation claim does not result in the legal or factual conclusion Richter's death occurred outside the course and scope of his employment.[22] The mere fact that Defendant Peavler did not submit a

---

[21]As an example of what type of situation would be governed by 85A O.S. § (C), Defendant Peavler refers to "missing the one-year statute of limitations." *See* [Doc. No. 30] at p.16. Under the AWCA, Richter's death would be subject to a two-year statute of limitations. 85 O.S. § 69(A)(3).

[22]As the parties agree, the question of whether Richter was acting in the course and scope of his employment is a fact which is in dispute.

worker's compensation claim as a result of Richter's death does not mean she had no valid worker's compensation claim. Fry's and Defendant J&S' statutory civil immunity is not mooted by Defendant Peavler's choice not to seek recovery under the AWCA, nor does Defendant Peavler's choice remove this matter from the impact of Exclusion 3. Regardless of whether Defendant Peavler elected to pursue a workers' compensation claim, the facts demonstrate Defendant J&S "may be held liable under workers compensation ... law" for Richter's death.

Oklahoma law demonstrates the undisputed facts upon which Defendant Peavler bases her claim that Fry was acting in the course and scope of his employment at the time of Richter's death are just as likely to support a determination Richter was acting in the course and scope of his employment when he was killed. Defendant Peavler maintains Fry was in the course and scope of his employment at the time of the underlying accident because Defendant J&S had instructed him to transport Richter and Vassar to the worksite and because Fry's truck had Defendant J&S' tools in it when the accident occurred. As noted above, the *Pina* Court relied on pre-AWCA authority in reaching its conclusion that Pina suffered a compensable injury while in the course and scope of his employment despite the statutory exclusion of travel to and from work from the definition of "course and scope of employment." This same pre-AWCA authority demonstrates Richter's death was a "colorable claim for compensation" because the same facts Defendant Peavler argues support a finding Fry was acting in the course and scope of his employment may also demonstrate Richter was, at the time of this death, within in the course and scope of his employment *Helmerich & Payne, Inc.* at 965 (upholding determination worker suffered compensable

injury in the course and scope of employment when driving his own vehicle in which other workers rode as part of a carpool and in which a water cooler used at work was being carried, despite the undisputed evidence demonstrating "[i]t was never definitely determined who owned or furnished the water container but it was not claimed by the employer that it did not belong to it" and "[t]here was no agreement by the employer to haul the employees or otherwise see that they reached their place of work or that they were returned from their work to their homes."); *Ince* at 347 (reversing denial of workers' compensation benefits for employee who was killed while driving vehicle home from work where "decedent was transporting an empty water can owned by decedent's employer, which can was used in carrying water from the home of the employee who transported the drilling crew to the drilling site where the water was drunk by members of the crew."); *Haco* at 677 (Plaintiff, who was not an employee of Haco and was injured in a two-vehicle accident when his car and a vehicle being driven by an employee of Haco, obtained a verdict in his favor against Haco on a theory of *respondeat superior* liability for its employee-driver's negligence. Haco appealed the verdict, arguing its employee was not in the course and scope of his employment at the time of the accident and, as such, it could not be held vicariously liable for its employee's actions. The Oklahoma Supreme Court upheld the jury's verdict, finding the employee who was not paid for travel time was acting in the course and scope of his employment when driving a vehicle for purposes of carpooling to work with two other workers and carrying a water can which was used on the job site, stating "We recognize as the general rule that a man's employment does not begin until he has reached the place of his employment, and does not continue after he has gone. [Citation omitted.] However, the

instant situation presents an exception to the general rule. Not only was it anticipated that an employee's car would be used but under the facts a particular person (on the day in question this was Hughes) and his car was to carry the ice water. Hughes was going to work but this does not vary the fact that he was engaged in carrying out instructions given relative to performance of acts in his employment."); and *Skinner* at 925 (reversing trial court's grant of summary judgment in favor of employer ("Braum's") where plaintiff, who was not an employee of Braum's, was injured when her car and a car driven by a Braum's employee collided, filed suit against employer under a theory of *respondeat superior* liability, stating "[w]e find that an employee, instructed to complete a task by an employer while traveling to work, may be within the scope of employment during the commute.").

Other pre-AWCA Oklahoma cases which have analyzed the question of whether an employee is in the course and scope of employment when traveling to and from work also demonstrate Richter had a "colorable claim for compensation." *Holliman v. Twister Drilling Co.*, 377 P.3d 133, 136 (Okla.2016) (upholding tribunal's award of workers' compensation benefits to employee who was injured in a two-car accident while a passenger in a carpool where employer did pay travel pay, but employee-passenger did not receive travel pay for the specific trip during which the accident occurred (the crew rotated the disbursement of travel pay), as injury fell within an exception to the general rule that travel to and from work is not considered within the course and scope of employment, stating in reliance on the case of *Christian v. Nicor Drilling Co.*, 653 P.2d 185 (Okla.1982) "[b]ecause Employer compensated the employees for travel expenses, an exception to the going and coming rule, Worker's injuries are compensable."); *Lucas v. Triad Drilling Co.*, 969 P.3d 363 (Okla.1998)

(holding worker who was injured in single-car accident while riding in the bed of a pickup truck being driven from work to his home by a co-employee fell within the "special task" exception to the general rule that travel to and from work is not considered within the course and scope of employment where worker had been asked to come to work to assist with a project for which he was not normally scheduled and employer provided transportation, but did not pay worker for travel time); and *Christian*, *supra* at 186 (footnote omitted) (holding passenger and driver employees sustained compensable injuries during travel to work in driver's vehicle after missing the employer-provided carpool and being instructed to drive themselves to work on the grounds an exception to the general rule that travel to and from work is not within the course and scope of employment exists "[w]hen the employer provides transportation to the job site or whenever the nature of the work itself creates a necessity for travel" and stating "[o]nce an employer has acknowledged a need to provide his personnel with transportation, it matters little what method is chosen so long as the means of conveyance used are within the contemplation of both the employer and the employee.")

Defendant Peavler attached a transcript of a recorded statement of Fry in support of her opposition to Progressive's Motion for Summary Judgment. *See* [Doc. No. 30-3]. Progressive raises no objection to Defendant Peavler's reliance on this transcript in support of her proposed additional undisputed material facts at enumerated paragraphs 26 and 27. *See* [Doc. No. 30] at pp.3-4. Under Tenth Circuit law, "(1) the content of summary judgment evidence must be generally admissible and (2) if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exchange*, 732

F.3d 1114 (10th Cir.2005) citing *Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1082 n. 5 (10th Cir.1999). Fry's unsworn statements include his description of why he was transporting Vassar and Richter; Defendant J&S' involvement in the arrangement of that transportation; and his transport of Defendant J&S' tools at the time of the underlying accident. It is, frankly, unclear to the Court why Defendant Peavler asserted additional fact number 26 and 27 and attached Fry's unsworn statement in support, as she did not refer to those additional facts or Fry's unsworn statement at any point in the body of her Response to Progressive's Motion for Summary Judgment.

In any event, Fry's statements are not hearsay, as they have not been presented for the truth of the matter asserted in the statement. FED.R.EVID.801. Specifically, neither party is required to prove whether Fry's statements concerning the circumstances surrounding the underlying accident are true in order for this Court to determine whether liability coverage exists under the J&S Policy. The parties agree the issue of whether Fry's statements demonstrate he was acting in the course and scope of his employment is disputed, and neither party asserts this factual issue must be answered by this Court in order to rule on Progressive's Motion for Summary Judgment. Simply put, the truth of the statements Fry made concerning facts relevant to the question of whether he was acting in the course and scope of his employment at the time of the underlying accident are irrelevant to the question of whether liability coverage exists under the J&S Policy. As such, Fry's unsworn statement is not hearsay and may be considered by this Court.

In his unsworn statement, Fry said he was instructed by Defendant J&S to "find some people to hire." *Id.* at 5:2-18. According to Fry, Richter and Vassar were his

"responsibility" and because they did not drive, he had to "go pick them up." *Id.* Fry also agreed that Defendant J&S (through its employee, Scott) made it his "task" to deliver Vassar and Richter to the job site and put him "in charge of rounding them up." *Id.* at 6:18 – 7:4. Fry said if he did not pick Vassar and Richter up, he would have been working "by [him]self." *Id.* These statements demonstrate Defendant J&S provided Richter transportation by directing Fry to deliver him to the job site. These statements also demonstrate "the means of conveyance [were] within the contemplation of both the employer and employee." *Christian* at 186.[23] These statements, which Defendant Peavler – in the course of the *Peavler* litigation – has argued prove Fry was in the course of scope of his employment (along with the fact Fry was carrying Defendant J&S' tools in his vehicle), arguably also support a determination Richter was acting in the course and scope of his employment at the time he was killed.

Again, this Court does not hold Richter was acting in the course and scope of his employment when he was killed. Rather, it finds under Oklahoma law, the AWCA, and the undisputed facts of this matter, Richter – as a matter of law – may have been in the course and scope of his employment at the time of the underlying accident. Defendant Peavler's choice not to pursue workers' compensation benefits does not change this. As such,

---

[23]The Court acknowledges *Christian* is a pre-AWCA decision. However, the *Pina* Court cited pre-AWCA authority in support of its interpretation and application of the AWCA. Additionally, the Oklahoma Supreme Court relied upon Christian when deciding the 2016 case of *Holliman*, which interpreted and applied the 2011 version of the Workers' Compensation Code, enacted 30 years after *Christian* was decided. The Oklahoma Supreme Court has also cited to pre-AWCA authority in decisions interpreting and applying the AWCA for purposes of determining whether an employee has suffered a compensable injury. *See Corbeil v. Emricks Van & Storage, Guarantee Insurance*, 404 P.3d 856 (Okla.2017) and *Graham v. D&K Oilfield Services*, Inc., 404 P.3d 863 (Okla.2017).

Defendant Richter's death is an "obligation" for which Defendant J&S "**may be** held liable under workers compensation ... law." (Emphasis added.) This Court, therefore, holds the liability coverage provided by the J&S Policy is excluded by Exclusion 3.

This determination is supported by the public policy of Oklahoma, Oklahoma statutes, and Oklahoma jurisprudence specifically holding an insurer may exclude coverage for liabilities that are compensable under the workers' compensation statutory scheme. *See* 47 O.S. §7-324(e) and *Deffenbaugh v. Hudson*, 791 P.2d 84, 86 (Okla.1990) ("[a]utomobile liability insurers are not obligated by law to protect their insureds against responsibility which falls within the workers' compensation reparations regime. The terms of 47 O.S.1981 § 7–324(f) clearly *relieve* insurers of any legal obligation to include in the standard motor vehicle liability policy a provision for indemnity against *employment-related* harm.") (emphasis in original) (footnote omitted).[24] While this Court is unaware of any published Oklahoma state court decision holding Exclusion 3 (or other employment-related automobile liability exclusions) remains effective even when an employer fails to obtain workers' compensation insurance, Progressive identified two Oklahoma federal court decisions which reached the conclusion Oklahoma substantive law would find the absence of workers' compensation insurance would not avoid the impact of an automobile liability policy's employment-related exclusions. *Allstate Fire and Casualty Ins. Co. v. Adame*, 2017 WL 5617071 (W.D.Okla.) (holding automobile insurer was not required to provide liability coverage for lawsuit multiple employees, who all parties stipulated were in the course and

---

[24]At the time of the *Deffenbaugh* decision, the subsection at issue was codified as (f). There are no substantive difference between the language of the subsection analyzed in *Deffenbaugh* and the current language set forth in subsection (e).

scope of their employment at the time of a car accident, filed pursuant to 85A O.S. §5(B)(1) against employer who did not have workers' compensation insurance at time of accident) and  *Colony Ins. Co. v. Jackson*, 2011 WL 2118728, *8 (N.D.Okla.) ("*Colony II*") (stating after determining claimant was within course and scope of employment at time of car accident "J.C.'s failure to carry workers' compensation insurance—and Dale's failure to recover any workers' compensation benefits—does not prevent application of the Workers' Compensation Exclusion.").  In reaching its determination that the absence of workers' compensation insurance did not "prevent application of Workers Compensation Exclusion," the *Colony II* Court cited the following authority:

> *[J]ohnson v. Marciniak*, 231 F.Supp.2d 958, 959–60 (D.N.D.2002) (holding that identical workers' compensation exclusion precluded coverage, regardless of whether any workers' compensation benefits are actually paid to the injured party) (explaining that an employer/insured "should not be rewarded for failure to obey workers compensation law" and that if employer would have obtained workers' compensation insurance, any tort claim against it for an employee's on the job injury would have been barred); *Brown*, 184 S.W.3d at 534–35 ("Every jurisdiction that has considered this issue has held that a "workers' compensation" exclusion in a policy of commercial automobile or CGL insurance ... precludes coverage when the insured employer is exposed to tort liability solely because of its failure to procure a policy of workers' compensation insurance.")

*Colony II* at *8.

As Defendant Peavler points out, it was either stipulated or determined in these two federal cases that the parties seeking recovery for their injuries were acting within the course and scope of their employment at the time they sustained those injuries.  *See* [Doc. No. 30] at p.9.  This distinction does not moot the rationale of these decisions which applies to this matter.  The workers' compensation exclusions in the automobile liability policies at issue

in those cases were not found ineffective because the employer had no workers' compensation insurance. Similarly, Exclusion 3 is not moot because Defendant Peavler chose not to present what this Court has determined, as a matter of law, was a "colorable claim for compensation" to the Workers' Compensation Commission. Unlike the employers in *Adame* and *Colony II*, Defendant J&S carried workers' compensation insurance. Defendant Peavler, therefore – unlike the employees in *Adame* and *Colony II* – had the option of presenting a workers' compensation claim. In fact, if she wished to recover damages for Richter's death, she was required to do so.

The Workers' Compensation Commission is vested with "the exclusive responsibility and duty to carry out the provisions of" the AWCA. 85A O.S. § 19(A). It is only when an employer fails to carry workers' compensation insurance that an employee is permitted to "maintain an action in the district court for damages ... ." 85A O.S. § 5(D). By statute, it is the Workers' Compensation Commission that has the exclusive authority to determine whether Richter's death occurred in the course and scope of employment, thereby making it a compensable injury, unless the employer at issue has failed to obtain workers' compensation insurance. Defendant Peavler never invoked the authority of the Workers' Compensation Commission for purposes of determining whether Richter's death was compensable under the AWCA despite the fact Defendant J&S had workers' compensation insurance. Instead, she made the decision not to submit a workers' compensation claim. This unilateral decision – just like an employer's decision not to carry workers' compensation insurance – does not serve to moot the impact and effect of Exclusion 3.

If this Court were to hold Defendant Peavler's choice not to present what it has determined as a matter of law was a "colorable claim for compensation" to the exclusive authority of the Workers' Compensation Court negated the impact of Exclusion 3, it would be sanctioning her attempt to shift the burden of insuring employment-related injuries from workers' compensation insurers to automobile liability insurers. This would violate Oklahoma's clear public policy "*reliev[ing]* insurers of any legal obligation to include in the standard motor vehicle liability policy a provision for indemnity against *employment-related* harm." *Deffenbaugh* at 86 (emphasis in original). *See also* 47 O.S. §7-324(e).

This Court acknowledges it is possible, had Defendant Peavler presented a workers' compensation claim for Richter's death, it may have been ultimately determined Richter was not acting in the course and scope of his employment when he was killed. Many workers' compensation claims raise the issue of whether the injured employee was acting within the course and scope of employment when the injury occurred. For instance, the Oklahoma Supreme Court recently analyzed the issue of whether an employee who slipped and fell on an icy curb when walking from the OSU/OKC parking lot to the building in which she worked had sustained a compensable injury under the AWCA. *Legarde-Bober v. Oklahoma State University*, 378 P.3d 562 (Okla.2016). The AWCA specifically excludes from the definition of "course and scope of employment ... any injury occurring in a parking lot or other common area adjacent to an employer's place of business before the employee clocks in or otherwise begins work for the employer or after the employee clocks out or otherwise stops work for the employer." 85A O.S. § 2(13)(c). The Oklahoma Supreme Court found the employee had been in the course and scope of her employment as OSU/OKC had

admitted the parking lot was on its premises. *Legarde-Bober* at 564-565.[25]  Similarly, as discussed at length above, the *Pina* Court held the employee seeking workers' compensation benefits for an injury sustained in an accident that occurred while the employee was driving to the job site was acting within the course and scope of his employment under 85A O.S. § 2(13).

There are four enumerated exceptions from the definition of the term "course and scope of employment" under the AWCA.  85A O.S. § 2(13).  Whether any given employee falls within those exceptions when injured, thereby justifying the denial of workers' compensation benefits, is an issue of fact over which the Workers' Compensation Court has exclusive jurisdiction.[26]  Under Defendant Peavler's theory of liability, any employee whose right to recover workers' compensation benefits is dependent upon a factual determination of whether he or she was acting within the "course and scope of employment" as defined by the AWCA may simply avoid the exclusive jurisdiction of the Workers' Compensation Court by choosing not to pursue a workers' compensation claim and, instead, pursuing a tort case in district court against a co-employee or employer for recovery of damages.  This violates the very "Grand Bargain" of workers' compensation Defendant Peavler described, and is an "end-run" around the statutory immunity the AWCA provides to employers and co-

---

[25]The Oklahoma Supreme Court also found 85A O.S. § 2 (13)(a), (b), and (d) inapplicable to the employees' claim.  *Legarde-Bober* at 564-565.

[26]As noted herein, it is only if an employer fails to obtain workers' compensation insurance that an employee may submit the question of whether he or she suffered a compensable injury to a district court.  85A O.S. § 5(D).

employees.[27]  Under Defendant Peavler's theory of insurance coverage, an injured employee can shift the burden of indemnification for work-related injuries from a workers' compensation insurer to an automobile liability insurer by simply choosing not to submit a workers' compensation claim.  This violates Oklahoma's express public policy of "*reliev[ing]* insurers of any legal obligation to include in the standard motor vehicle liability policy a provision for indemnity against *employment-related* harm."  *Deffenbaugh* at 86 (emphasis in original).  *See also* 47 O.S. §7-324(e).

Finally, this Court recognizes the two-year statute of limitations governing Defendant Peavler's workers' compensation claim expired on July 7, 2016.  85A O.S. § 69(A)(3).  As Defendant Peavler acknowledges, the statutory immunity afforded to Fry and Defendant J&S remains despite the expiration of the statute of limitations governing her workers' compensation claim.  85A O.S. § 5(D).  *See also* [Doc. No. 30] at p. 16.  Defendant J&S,

---

[27]The Court notes Defendant Peavler's reliance on the statement made by Justice Wilson in her concurring opinion in the *Deffenbaugh* case: "It is settled in this jurisdiction that an employee is immune from tort liability for injury to a co-employee **when the co-employee receives workers' compensation for the injury**."  *Deffenbaugh* at 91.  (Bold and italics emphasis added by Defendant Peavler at [Doc. No. 30], p.7.)  In *Deffenbaugh*, it was undisputed the injured employees and employee who caused the injury (during a one-car accident) were acting in the course and scope of their employment; at issue was whether the employee who caused the injury had waived the statutory immunity provided by the version of the statutory workers' compensation scheme in effect at that time by purchasing personal automobile liability insurance.  *Deffenbaugh* at 85-86.  The *Deffenbaugh* Court found no waiver of the statutory immunity had occurred.  Defendant Peavler suggests this statement by Justice Wilson means an injured employee must actually receive workers' compensation benefits for the statutory immunity provided by the AWCA to apply.  This Court disagrees.  Rather, the statutory immunity applies to any claim for damages over which the Workers' Compensation Commission has the exclusive authority to determine whether a compensable injury has occurred.  For the reasons set forth herein, under Oklahoma law, the question of whether Richter's death was a compensable injury under the AWCA is one over which the Workers' Compensation Commission has exclusive authority.  As such, there is no requirement Defendant Peavler have actually obtained workers' compensation benefits for Richter's death in order for this Court to determine as a matter of law J&S "may be held liable under workers' compensation ... law" as stated in Exclusion 3 of the J&S Policy.

therefore, "may be held liable under workers' compensation ... law" even though the statute of limitations has expired; that law dictates Fry and Defendant J&S would have statutory immunity over Defendant Peavler's workers' compensation claim, had she chosen to submit that claim (whether before or after the expiration of the 2-year statute of limitations) to the one tribunal that has exclusive authority over the question of whether Richter's death was a compensable injury under the AWCA – the Workers' Compensation Commission. As such, the expiration of the statute of limitations governing Defendant Peavler's workers' compensation claim does not serve as an impediment to this Court's determination that Exclusion 3 of the J&S Policy bars liability coverage for the underlying accident and ensuing *Peavler* litigation.

## CONCLUSION

For the reasons outlined above, Progressive's Motion for Summary Judgment is **GRANTED** in its entirety. **IT IS HEREBY ORDERED** Progressive (1) owes no more than $25,000 of indemnity coverage to Defendant Peavler under the Fry Policy in the event any verdict is entered against Defendant J&S in the *Peavler* litigation based on the theory of vicarious or *respondeat superior* liability; (2) owes no uninsured/underinsured ("UM/UIM") coverage to Defendant Peavler under the J&S Policy; (3) owes no medical payments ("medpay") coverage to Defendant Peavler under the J&S Policy; and (4) owes no duty to defend or indemnify Defendant J&S or Fry under the liability coverage provisions of the J&S Policy.

IT IS SO ORDERED this 7th day of November, 2018.

James H. Payne
United States District Judge
Eastern District of Oklahoma